| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF PUERTO RICO | |

MANUEL FRANCO FIGUEROA, et. al.,

    Plaintiffs,

    v.

STATE INSURANCE FUND, et. al.,

    Defendants.

Civil No. 11-1025 (JAF)

## **OPINION AND ORDER**

Plaintiffs sue under 42 U.S.C. §§ 1983 and 1988 for damages and attorneys' fees against Defendants, in their official and personal capacities, alleging equal protection and substantive due process violations of the Fourteenth Amendment of the U.S. Constitution, as well as political discrimination in violation of the First Amendment.  (Docket No. 1 at 24–25.) Plaintiffs also claim relief under Puerto Rico laws, 29 L.P.R.A. § 149 (2009) ("Law 100"), as well as under the contract clause of Section 7, Article II of the Puerto Rico Constitution, and under Puerto Rico's general tort provision, 31 L.P.R.A. § 5141 (2009)  ("Article 1802").  (Id. at 25–26.)  Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), (Docket No. 20), and Plaintiffs oppose (Docket No. 25).

## I.

## **Factual Allegations**

We derive the following facts from the complaint.  (Docket No. 1.)  Plaintiffs were employees of Puerto Rico's State Insurance Fund (the "SIF"), a public corporation.  (Id. at 10.) All twenty coplaintiffs were appointed to career managerial positions between the years

Civil No. 11-1025 (JAF)                                                                    -2-

1   2004–2010, pursuant to the SIF Personnel Regulation adopted on January 11, 2000, by then

2   Administrator, Juan A. Martínez.  (Id.)

3         From 2000–2008, Puerto Rico's executive branch was controlled by Sila M. Calderón-

4   Serra and Aníbal Acevedo-Vilá, both members of the Popular Democratic Party ("PDP").  (Id.

5   at 12.)  In 2008, Governor Luis Fortuño was elected Governor of Puerto Rico.  Fortuño is a

6   member of the New Progressive Party ("NPP"), the rival of the PDP.  In 2009, Fortuño

7   appointed codefendant Zoimé Álvarez-Rubio ("Álvarez-Rubio") Administrator of the SIF.  (Id.

8   at 9.)  Álvarez-Rubio allegedly describes herself as an "NPP activist."  (Id.)  Codefendant Sául

9   Rivera ("Rivera Rivera") has been at all times the Human Resources Director of the SIF,

10  reporting to the Administrator of the SIF.  (Id. at 9–10.)  The complaint alleges that Rivera

11  Rivera is a "very active and vocal supporter of the NPP."  (Id. at 10.)

12        Shortly after taking office, Álvarez-Rubio and Rivera Rivera commissioned an "audit"

13  of the appointments and promotions that took place at the SIF between 2001 and 2008.  (Id. at

14  12.)  Plaintiffs allege that the audit was designed to "cherry-pick" those employees who had

15  been appointed during the governorships of Sila M. Calderón-Serra and Aníbal Acevedo-Vilá.

16  (Id.)  The complaint alleges that Álvarez-Rubio assigned high-ranking members of her staff to

17  gather information about the political affiliations of career employees who held managerial

18  positions.   (Id.)   The real objective of the audit, Plaintiffs say, was to lay-off as many

19  sympathizers of the PDP as possible.  (Id.)  Plaintiffs also allege that the audit targeted those

20  members of the NPP who had supported Governor Fortuño's rival in the 2008 primary contest,

21  former Governor Pedro Rosselló ("Rosselló").  (Id.)  The idea was to replace these employees

22  with employees who were loyal to Álvarez-Rubio and the NPP.  (Id. at 13.)

1    As a result of the audit, Plaintiffs received letters from the SIF notifying them that their

2    appointments during the previous PDP administrations were nullities.  (Id.)  The annulment of

3    Plaintiffs' appointments meant that some of the Plaintiffs lost their jobs entirely; others were

4    merely demoted to the positions they had before their appointments were made.  (Id.)  The SIF

5    began delivering letters of intent to discharge these employees on January 8, 2010.  (Id.)  On

6    that same day, Plaintiffs allege that the NPP website posted an article stating that the SIF was

7    annulling the appointments made during the previous PDP administrations.  (Id.)  The

8    implication, according to Plaintiffs, was that these annulments would be favorable to the NPP's

9    partisan interests.  (Id.)  Plaintiffs also allege that Álvarez-Rubio made comments to the press

10   about her desire to replace PDP appointees with "persons of her confidence."  (Id. at 15.)

11                                            **II.**

12                  **Standard for a Motion to Dismiss Under 12(b)(6) and 12(b)(1)**

13   A defendant may move to dismiss an action, based solely on the complaint, for the

14   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

15   In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all

16   reasonable inferences in favor of the [plaintiff]."  Wash. Legal Found. v. Mass. Bar Found., 993

17   F.2d 962, 971 (1st Cir. 1993).

18   "[A]n adequate complaint must provide fair notice to the defendants and state a facially

19   plausible legal claim."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

20   In considering a complaint's adequacy, we disregard "statements in the complaint that merely

21   offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of

22   action."  Id. (internal quotation marks omitted).  We then take as true what remains,

1    "[n]onconclusory factual allegations . . . even if seemingly incredible." Id.  On the basis of

2    those properly-pled facts, we assess the "reasonableness of the inference of liability that the

3    plaintiff is asking the court to draw." Id. at 13.

4    **III.**

5    **Analysis**

6    Defendants argue that Plaintiffs have failed to state a claim under the First Amendment

7    and the Fourteenth Amendment.  (Docket No. 20.)  They also ask the court to dismiss Plaintiffs'

8    commonwealth law claims.  (Id.)  We find that Plaintiffs have stated a claim under the First

9    Amendment, but failed to state a claim under the Fourteenth Amendment.  We explain briefly

10    below.

11    **A.**    **First Amendment**

12    Defendants argue that Plaintiffs have failed to state a prima-facie case of political

13    discrimination under § 1983 and the First Amendment.  (Docket No. 20 at 9–11.)  For the

14    reasons set forth below, we disagree.

15    **1.**    **Prima Facie Case under § 1983**

16    "Section 1983 provides a private right of action against state actors—that is, public

17    officials acting under color of state law—who deprive individuals of rights confirmed by federal

18    constitutional or statutory law." Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).

19    "Public officials may be held liable under § 1983 for a constitutional violation only if a

20    plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or

21    omissions of the official, or from indirect conduct that amounts to condonation or tacit

22    authorization.'" Ocasio-Hernández, 640 F.3d at 16 (quoting Rodriguez-Garcia v. Miranda-

Civil No. 11-1025 (JAF)                                                                -5-

1    Marin, 610 F.3d 756, 768 (1st Cir. 2010)).  This standard can be met by a defendant "setting in

2    motion a series of acts by others which the actor knows or reasonably should know would cause

3    others to inflict the constitutional injury."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 50 (1st Cir.

4    2009).  Keeping in mind that a plaintiff may not have the whole factual record at her disposal

5    at this early stage of the proceedings, we must "draw on our 'judicial experience and common

6    sense' as we make a contextual judgment about the sufficiency of the pleadings."  Id. at 48

7    (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009)).

8           Defendants argue that Plaintiffs have failed to plead adequately the direct personal

9    involvement of the defendants.  (Docket No. 20 at 11.)  Defendants also argue that Plaintiffs

10   have failed to plead that partisanship was a substantial or motivating factor for the employment

11   decision. (Id. at 4.)  We disagree.

12          The complaint states that Álvarez-Rubio and Rivera Rivera "commissioned" the audit

13   that led to the nullifications of Plaintiffs' appointments.  (Docket No. 1 at 12.)  The complaint

14   also alleges that Álvarez-Rubio assigned high-ranking members of her staff to gather

15   information about the political affiliations of career employees who held managerial positions.

16   (Id. at 12.)  As Human Resources Director of the SIF, Rivera Rivera is alleged to have "directly

17   handled" the audit of files and the pre-termination hearings.  (Id. at 10.)  Further, the complaint

18   cites comments that Álvarez-Rubio made to the press, declaring herself responsible for

19   annulling 232 appointments made during PDP administrations.  (Id.)  The alleged purpose of

20   the audit was to replace the PDP-affiliated employees with those friendly to the NPP.  (Id. at

21   12–13.)  Taking all of this into account, we hold that Plaintiffs have pleaded "enough fact to

Civil No. 11-1025 (JAF)                                                                    -6-

1    raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct]."

2    Ocasio-Hernández, 640 F.3d at 17 (quoting Twombly, 550 U.S. at 556).

3            **2.    Prima-Facie Case of Political Discrimination**

4                    An actionable claim of political discrimination consists of four
5                    elements: "(1) that the plaintiff and defendant have opposing
6                    political affiliations, (2) that the defendant is aware of the
7                    plaintiff's affiliation, (3) that an adverse employment action
8                    occurred, and (4) that political affiliation was a substantial or
9                    motivating factor for the adverse employment action."
10
11   Ocasio-Hernández, 640 F.3d at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239

12   (1st Cir. 2010)).  Defendants argue that nineteen of the twenty coplaintiffs have failed to state

13   a claim under elements two and four—knowledge and discriminatory animus.  (Docket No. 20

14   at 9–11.)  Defendants argue that coplaintiff Ramón Ruiz-Nieves has failed to plead only the

15   fourth element.  We disagree with both of these contentions.

16           We begin with the second element: Whether Defendants had knowledge of Plaintiffs'

17   political affiliation.  Defendants recount allegations regarding their knowledge of Plaintiffs'

18   political affiliation and argue that we must disregard them as "meager" and "conclusory."  (Id.

19   at 9.)  We disagree.

20           Based on the detailed factual allegations provided by Plaintiffs, we can reasonably infer

21   from the facts that Defendants knew of Plaintiffs' affiliation.  See Ocasio-Hernández, 640 F.3d

22   at 23–24 (instructing courts to evaluate plaintiff's claim based on "cumulative effect" of all

23   facts alleged).  As in Ocasio-Hernández, here there is a clear indication that Defendants inquired

24   into the circumstances of Plaintiffs' appointments and made disparaging remarks about the

25   previous administrations.   Id. at 33.   The complaint alleges that Álvarez-Rubio publicly

1    criticized past PDP administrations and assigned high level members of her staff, including

2    Rivera Rivera, to look into the appointments during previous administrations, and to inquire into

3    the political affiliations of these employees. (Docket No. 1 at 9, 10, 12.)  This is sufficient to

4    establish defendants' knowledge of Plaintiffs' political affiliation. Ocasio-Hernandez, 640 F.3d

5    at 33.

6         Regarding discriminatory animus, we hold that Plaintiffs have again stated a plausible

7    claim.  The First Circuit has "previously explained that a politically charged employment

8    atmosphere 'occasioned by the major political shift from the NPP to the PDP . . . coupled with

9    the fact that plaintiffs and defendants are of competing political persuasions[ ] may be probative

10    of discriminatory animus.'" Id. at 17–18 (citing Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir.

11    1993)).  "Here plaintiffs have alleged just such a case."  Id. at 18.  Nineteen of the twenty

12    coplaintiffs are alleged to be well-known members of the PDP.  (Docket No. 1 at 3–8.)  Only

13    one coplaintiff, Luis Torres-Rodríguez ("Torres-Rodríguez"), is alleged to be "well recognized

14    as not affiliated to the NPP."[1]  (Id. at 4.)

15         We reiterate Plaintiffs' allegations that Defendants, active and vocal members of the

16    NPP, commissioned an audit in order to lay off as many PDP sympathizers as possible.  (Id. at

17    9–10.)  Plaintiffs also describe public comments made to the media in which Álvarez-Rubio

18    criticized past PDP administrations and discussed the benefits to the NPP of annulling the

19    appointments made during prior PDP administrations. (Id. at 9.)  These allegations, combined

20    with the "atmospheric evidence" surrounding the transition from PDP to NPP control, "serve

---

[1] At this stage of the proceedings, we will allow coplaintiff Torres-Rodríguez's claim to proceed to discovery.  See Borges Colon v. Roman-Abreu, 438 F.3d 1, 10 (1st Cir. 2006) (upholding jury verdict in favor of all plaintiffs, where thirty-five plaintiffs were affiliated with defendants' opposing party, the PDP, and one was affiliated with the NPP).

Civil No. 11-1025 (JAF)                                                                          -8-

1    to confirm the plaintiffs' core allegation: the defendants' political biases played a substantial

2    role in the employment decisions" at the SIF.  Ocasio-Hernández, 640 F.3d at 18, 19.

3            "The cumulative weight of the plaintiffs' factual allegations easily nudges their claim of

4    political discrimination 'across the line from conceivable to plausible' as to each defendant."

5    Id. (quoting Iqbal, 129 S. Ct. at 1951).  Therefore, Defendants' motion to dismiss will be denied

6    as to Plaintiffs' claims under the First Amendment.

7    **B.    <u>Equal Protection Clause</u>**

8            Defendants argue that Plaintiffs' Fourteenth Amendment claim fails, as the alleged

9    discrimination "is nothing more than a restatement of their First Amendment claim."  (Docket

10   No. 20 at 12.)  We agree.  Pagán v. Calderón, 448 F.3d 16, 36 (1st Cir. 2008).

11           Plaintiffs respond that their claim includes more than simply political discrimination.

12   (Docket No. 25 at 21.)  They argue that because Defendants' audit did not extend to those

13   appointments made under the Rosselló administration (which ended before 2001), the process

14   is suspect for some other reason beyond political discrimination.  (Id.) We are not persuaded.

15           First, Plaintiffs' own complaint makes clear why they believe the audit did not extend

16   to the Rosselló appointments.  Rosselló, like Defendants, was a member of the NPP.  (Docket

17   No. 25 at 12.) Defendants' alleged scheme was to "affect PDP appointees (in an effort to layoff

18   [sic] as many members of that party as possible) over similarly-situated NPP appointees."

19   (Docket No. 25 at 12.)  It was "no coincidence," therefore, that the audit included only those

20   appointments made during the PDP administrations from 2001 to 2008.  (Id.)  To go back

21   further than 2001 would have risked affecting the appointments made by another NPP

22   administration.  (Id.)

Civil No. 11-1025 (JAF)                                                                                    -9-

1         If this classification based on political affiliation did violate Plaintiffs' constitutional

2    rights, their claim lies under the First Amendment, not the Fourteenth.  First Circuit case law

3    makes clear that Plaintiffs cannot repackage their political discrimination claim as a claim under

4    the Equal Protection Clause. Pagán, 448 F.3d at 36 (1st Cir. 2008) ("[S]o long as [Plaintiffs']

5    allegations of political discrimination fit within the contours of the First Amendment, they are,

6    a fortiori, insufficient to ground a claim that the politically-inspired misconduct violated equal

7    protection guarantees.") We find that Plaintiffs' equal protection claim "flounders, as it is a

8    mere restatement of" their First Amendment claim.  Ruiz-Casillas v. Camacho-Morales, 415

9    F.3d 127, 134 (1st Cir. 1996).  We note that this rule "depends only on whether a specific

10   constitutional provision addresses the type of conduct at issue," and not on whether the plaintiff

11   will be successful under that provision.  Pagán, 448 F.3d at 36.

12   **C.**      **Due Process under the Fourteenth Amendment**

13        Defendants argue that Plaintiffs have failed to state a due process claim under the

14   Fourteenth Amendment.  (Docket No. 20 at 4.)  Specifically, Defendants argue that Plaintiffs

15   have failed to state a claim for procedural due process.  (Id. at 4–7.)  This is puzzling, as

16   Plaintiffs clearly describe their claim as one of substantive, not procedural, due process.

17   (Docket No. 1 at 23–24.)  Plaintiffs' opposition to the motion to dismiss reiterates that their

18   claim is for substantive due process.  (Docket No. 25 at 1.)  We, therefore, consider whether

19   Plaintiffs' complaint properly states a claim under substantive due process, finding that it does

20   not.[2]

---

[2] We agree with Defendants that the facts here do not state a claim for procedural due process.  See, e.g.,
Febus-Rodríguez v. Questell-Alvarado, 660 F. Supp. 2d 157, 178–80 (D.P.R. 2009) (dismissing plaintiff's

Civil No. 11-1025 (JAF)                                                                    -10-

1          Plaintiffs argue that Defendants' actions are "conscience-shocking." (Docket No. 1 at

2     24.) We disagree. "A substantive due process claim requires allegations that the government

3     conduct was, in and of itself, inherently impermissible irrespective of the availability of

4     remedial or protective procedures." Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008)

5     (citing Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990)).  "The state conduct itself must

6     be so brutal, demeaning and harmful that it is shocking to the conscience." Id. (citing Rochin

7     v. California, 342 U.S. 165 (1952); Amsden, 904 F.2d at 754).

8          Plaintiffs' allegations of wrongful discharge or demotion do not "cross this constitutional

9     threshold." Id.; see also Jeneski v. City of Worchester, 476 F.3d 14, 18 (1st Cir. 2007) (finding

10    no substantive due process claim in wrongful discharge suit by city employee; noting that

11    "substantive due process has a very limited reach under modern precedent").

12    **D.     Puerto Rico Claims**

13         Plaintiffs also bring claims arising under Puerto Rico statutory and constitutional law.

14    (Docket No. 1 at 25–27.)  In their motion to dismiss, Defendants write that "if the Court

15    dismisses Plaintiffs' federal claims, we respectfully request the Court to decline to exercise

16    jurisdiction over" Plaintiffs' commonwealth law claims. (Docket No. 20 at 12.) As we decline

17    to dismiss Plaintiffs' federal claims under the First Amendment, Defendants' request is

18    unavailing. Accordingly, Plaintiffs' supplemental commonwealth law claims remain pending.

───────────────

procedural due process claims, absent any allegations that post-deprivation remedies were inadequate).

Civil No. 11-1025 (JAF)                                                                      -11-

1                                          **IV.**

2                                    **Conclusion**

3           Given the foregoing, we hereby **GRANT IN PART** and **DENY IN PART** Defendants'

4   Motion to Dismiss pursuant to Rule 12(b)(6).   (Docket No. 20.)   We   **DISMISS WITH**

5   **PREJUDICE** Plaintiff's claims under the Fourteenth Amendment of the U.S. Constitution.

6   Plaintiffs' claims under the First Amendment and under commonwealth law remain pending.

7           **IT IS SO ORDERED.**

8           San Juan, Puerto Rico, this 30th day of March, 2012.

9                                          s/José Antonio Fusté
10                                         JOSE ANTONIO FUSTE
11                                         U.S. District Judge