UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MANUEL FRANCO-FIGUEROA, et. al.,

Plaintiffs,

v.

STATE INSURANCE FUND, et. al.,

Defendants.

Civil No. 11-1025 (JAF)

## OPINION AND ORDER

We must decide whether an employee's evidence of discrimination is sufficient to withstand his employer's motion for summary judgment in this political discrimination case.

### I.

### Background

Because we must view all facts in the light most favorable to the non-moving party when considering a summary judgment motion, to the extent that any facts are disputed, the facts set forth below represent Plaintiffs' version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiffs' asserted facts do not properly comply with Local Rule 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly).

Plaintiffs were employees of Puerto Rico's State Insurance Fund Corporation ("SIFC"), an entity of the Commonwealth of Puerto Rico responsible for administering the local workers' compensation program. (Docket Nos. 1 at 10 and 109 at 2.)  Plaintiffs' positions were annulled, following an audit commissioned by codefendants Zoimé Alvarez–Rubio, Administrator of the SIFC, and Sául Rivera, formerly the Associate Director of Human Resources at SIFC. (Id.at 9-10.)  The audit reviewed 3,835 files and showed that 232 personnel appointments, including Plaintiffs, were made through closed or internal SIFC recruitment announcements, in violation of Article 14 of the SIFC's Personnel Regulations requiring open competition. (Docket No. 109 at 7.)  As a result, Alvarez-Rubio ordered the annulment of all the improper personnel transactions. (Docket No. 89-1 at 5.).  She made no exceptions. (Id.)  Alvarez-Rubio sent a letter to each affected employee, communicating her intent to annul their appointments.  All of the letters explained the audit findings, and the policy that the improper appointments violated.  Plaintiffs later appealed through the Commonwealth judicial system.  The Puerto Rico Supreme Court confirmed that the promotions violated Commonwealth law and that the annulments were legal.  Gonzalez-Segarra v. State Insurance Fund Corporation, Offic. Trans. CC-2011-1051 (March 19, 2013).

## II.

## **Legal Standard**

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable jury could find

for plaintiffs on each of their claims when all reasonable inferences from the evidence are drawn in their favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.

### Discussion

Section 1983 creates a cause of action against those who, acting under color of state law, violate a plaintiff's constitutional or federal rights. See 42 U.S.C. § 1983; Maine v. Thiboutot, 448 U.S. 1, 4(1980); see, e.g., Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de P.R., 84 F.3d 487, 491 (1st Cir. 1996). Here, Plaintiffs assert that there are triable claims, including violations of the federal constitution and Puerto Rico law. All of these claims lack merit.

Qualified immunity bars Plaintiffs' political affiliation discrimination claim against Defendants. To determine whether qualified immunity applies, a court must decide whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 230-33 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Government employees who do not occupy policy-making positions of trust and confidence are protected against adverse employment actions based on their political affiliation. Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006).

Thus, the sole question is whether Plaintiffs have shown a violation of their constitutional rights. They must, among other things, present evidence: (1) that Defendants knew of their political affiliation, and (2) that their political affiliation was a

"substantial" or "motivating" factor in Defendants' decision to terminate Plaintiffs.  Id. at 48; Gonzalez-De-Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Plaintiffs have failed to present evidence of either requirement.

### A.     Knowledge of Plaintiffs' Political Affiliation

Plaintiffs did not make out a *prim-facie* case of discrimination, because they presented no evidence that Defendants knew or had reason to know that Plaintiffs were members of the PDP.  Welch v. Ciampa, 542 F.3d 927, 938–39 (1st Cir.2008)  (stating that the plaintiff must show the defendant has knowledge of her political affiliation to establish a prima-face case of political discrimination) (quoting Martinez–Vélez v. Rey–Hernández, 506 F.3d 32, 39 (1st Cir. 2007).  Alvarez-Rubio testified in her deposition that she did not have any knowledge of the Plaintiffs' political affiliations prior to the complaint's filing.  (Docket No. 89-2 at 12).  She answered the question directly:

> Q. Do you know the political affiliation of Zaida from the hospital?
>
> A. No. No, and I refer to the same answer that I gave you at the beginning that I do not know the political affiliation of any of my employees.

(Docket No. 99-1 at 90-1.)  Plaintiffs either admit that they cannot affirm that Alvarez-Rubio knows their political affiliations or that they have never talked with her regarding their political affiliations.  (Docket No. 109 at 18.)  Rivera, as well, did not have knowledge of Plaintiffs' political affiliation prior to receiving the complaint.  (Docket No. 89-10 at 13.)

In response to this evidence from the Defendants, Plaintiffs point only to a series of spreadsheets included in the audit report that detail those employees whose promotions were annulled. (Docket No. 89-4 at 18-34.) The spreadsheets include: The names of each employee; their job title and location prior to their promotion; their salary; their position's job announcement number; and the effective date of their promotion. (Id.) Despite Plaintiffs' suggestion otherwise, nowhere does the spreadsheet include information regarding political affiliation.

Plaintiffs also contend that they were well-known and open supporters of the PDP and that their political affiliation was common knowledge at the time of the audit and the subsequent annulments. (Docket No. 1 at 3-8.) We find no support for this assertion adequate to survive summary judgment. While it is true that some of the Plaintiffs have occupied municipal office or trust positions at SIFC or other agencies during PDP administrations, (Docket No. 89-1 at 14, 18, 36), that fact is not sufficient to establish the Defendants were aware of the Plaintiffs' political affiliation. "Evidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, ... may not suffice to show that a challenged employment action was premised upon political affiliation." Ramos-Borges v. Puerto Rico Health Department, 740 F.Supp.2d 262, 277 (D.P.R. 2010) (quoting Febus-Cruz v. Sauri-Santiago, 652 F.Supp.2d 140, 149 (D.P.R. 2009)). Here, such evidence, even allowing for its tenuousness, is insufficient. Absent this complaint, the Plaintiffs claim their political activities and, in some cases, service in elected office, was generally known to Defendants. But those activities took

place away from SIFC premises and after working hours—in some cases, very long ago. (Docket No. 89-1 at 14, 17, 19, 21, 32, 36, 43, 45, 47, 56.)

Defendants cannot be liable for annulling Plaintiffs' promotions on the basis of their PDP affiliation unless Defendants knew or had reason to know Plaintiffs were members of the PDP. Plaintiffs need to provide more than the juxtaposition of circumstantial evidence of unfair treatment with evidence that Defendants' political affiliation differs from their own. Padilla-Garcia v. Guillermo-Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). Therefore, Plaintiffs' political discrimination claim fails on this most basic requirement: That the Defendants knew of Plaintiffs' political affiliation.

**B.      "Substantial" or "Motivating Factor"**

Assuming *arguendo* that Plaintiffs had provided evidence that Defendants knew or had reason to know they belonged to the PDP, Plaintiffs still needed to show that their PDP affiliation was a "substantial" or "motivating" factor in the decision to annul their promotions. Mt. Healthy, 429 U.S. at 287; see Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 30 (Plaintiff bears burden of producing sufficient evidence that political affiliation was a substantial or motivating factor in challenged employment action.) Plaintiffs did not.

To show that their party affiliation was a factor in the annulment of their promotions, Plaintiffs argue that: Alvarez–Rubio requested the audit coincide with the previous PDP administration's years in office; there was a heavily politicized environment at SIFC following the change in administrations; the NPP affiliates included in the annulments were punished for their support of a rival NPP gubernatorial

candidate—otherwise, the annulments had a disproportionate impact on PDP affiliates. Looking at this evidence individually or together, nothing suggests that Plaintiffs' PDP affiliation was a "substantial" or "motivating" factor in the annulment of their promotions. Defendants provided evidence indicating that Plaintiffs would have had their promotions annulled because the promotions were made in clear violation of Articles 2 and 14.1 of the SIFC Employee Manual.

### 1. Time Frame of the Audit

Plaintiffs infer that Alvarez-Rubio selected the time period for the audit because it would disproportionately target PDP employees. (Docket Nos. 1 at 34-5.) Their argument rests on the implied supposition that Alvarez–Rubio ordered a review of all personnel transactions that occurred between 2001 and 2008—or the duration the outgoing PDP administration was in office—solely for the purposes of rooting out promotions given to PDP affiliates. (Docket No. 98 at 8.)

However, the evidence in the record supports Defendants' contention that PDP affiliation played no role—let alone a substantial or motivating one—in the time frame selected for the audit. The time frame chosen merely corresponded to the review of the personnel files of all active employees at the time. (Docket No. 89-1 at 4.) Indeed, between 2001 and 2008 no comprehensive evaluation was done to determine whether personnel transactions, including promotions, were compliant with SIFC regulations and Commonwealth law. (Docket No. 109 at 7.) As the highest executive officer of the SIFC, Alvarez–Rubio's job required her to administer the agency's work force. (Id. at 2.) The mere fact that she asked that the agency determine if it was in compliance with its

own regulations does not give rise to an inference of discrimination: Quite the opposite. Bending the rules for political advantage might be sufficient grounds for inferring discriminatory intent, but *enforcing* the rules for all employees is not.

### 2. **Politically-charged Environment**

Plaintiffs claim that there was a highly-charged political atmosphere at SIFC following the November 2008 elections. (Docket No. 98 at 6.) They point to one incident in particular where a group of employees, waving NPP flags in the lobby of an SIFC regional office, yelled at PDP employees that "you are going out" and "this is revenge for all that you fired." Relying on Anthony v. Sundlun, 952 F.2d 603 (1st 1991), Plaintiffs suggest that the charged atmosphere may be probative of discriminatory animus, especially because the Defendants are from the opposing political faction. (Id.)

Sometimes, "[e]vidence of a highly-charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially in an instance where a plaintiff was a conspicuous target for political discrimination." Rodríguez–Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998). Such evidence, however, is not sufficient here. Rather, in this case, government officials enforced the law (as the Commonwealth Supreme Court has agreed it should be interpreted) against *all* employees, including members of both parties, unaffiliated individuals, and employees who were themselves conducting the review. Nothing about those facts permits an inference of animus.

### 3. The Audit's Disproportionate Impact on PDP Affiliates and the Inclusion of NPP Affiliates

Plaintiffs claim the audit had a disproportionate impact on PDP affiliates. (Docket No. 99 at 8.). Plaintiffs further assert that NPP affiliates were only included among those whose promotions were annulled because they openly favored Governor Luis Fortuño's rival in the NPP primary election. (Docket No. 1 at 12.)

Although NPP affiliates commissioned it, the audit did not merely target PDP employees. See Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1, 2 (1st Cir. 2012) ("a reshuffling of positions affects people, and the people affected included NPP *and* PDP sympathizers"). Plaintiffs could not provide evidence that the audit only impacted members of the PDP. Instead, the summary-judgment submissions here show that compliance with SIFC personnel regulations and Commonwealth law affected members of the PDP and NPP alike.

In fact, the audit revealed that even Rivera, the audit director and an affiliate of the NPP, had received an appointment to a career position that violated merit principles and notice provisions. (Id. at 5-6.) His appointment was annulled. (Id.) All told, ten employees affiliated with the NPP had their appointments or promotions annulled. (Docket No. 109 at 11.) Additionally, eight employees unaffiliated with either the PDP or the NPP had their promotions annulled. (Id.)

The Supreme Court of Puerto Rico independently concluded that the audit revealed real violations of law that required the improper promotions to be annulled. The Court held that the internally-posted promotions "violated the SIFC Personnel

Regulations and contravened the merit principle." <u>Wanda I. Gonzalez-Segarra v. State Insurance Fund Corporation</u>, P.R. Offic. Trans. CC-2011-1051. Moreover, outside postings guarantee "that appointments and promotions were based in merit and not favoritism" and, here, no circumstances existed to allow for "sidestep[ping] the open competition mechanism." <u>Id.</u> The Puerto Rico Supreme Court has held on many occasions that the merit principle protects the public interest and affirms the primacy of equal treatment in the selection and promotion of civil servants. See <u>Rodriguez v. Banco Gubernamental de Formento para Puerto Rico</u>, 151 D.P.R. 383, 410.

Plaintiffs maintain that the inclusion of NPP affiliates and unaligned employees among those whose promotions were annulled was purely pretextual but that the audit had a disproportionate impact on PDP affiliated employees. While "we recognize that a prima facie case for political discrimination may be built on circumstantial evidence," Plaintiffs have not supplied "the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations." <u>Kauffman v. P.R. Tel. Co.</u>, 841 F.2d 1169, 1173 (1st Cir.1988). Moreover, the mere fact that the uniformly-applied audit had a disproportionate impact on PDP affiliates does not prove Defendants improperly targeted Plaintiffs. <u>Sanchez-Lopez v. Fuentes-Pujols</u>, 375 F.3d 121, 140 (1st Cir. 2004) ("If uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted.").

The <u>Mt. Healthy</u> defense deals with employment actions driven by "mixed motives," where both "lawful" and "unlawful" reasons justify an adverse employment

action. The defense provides that "if the lawful reason alone would have sufficed to justify the [action]," then the employee cannot prevail. McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995). In this context, that means a plaintiff cannot prove impermissible political discrimination where the Defendants would have taken the same action anyway based on a legitimate reason. Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 706 n. 4 (1st 1993). That is the situation here: The record shows that Defendants would have reclassified Plaintiffs' positions regardless of any political considerations. So, even if the Defendants had mixed motives for reclassifying Plaintiffs' positions, Defendants have sufficiently established a Mt. Healthy defense that the Plaintiffs have not been able to rebut.

**C.   Plaintiffs' Commonwealth Claims**

Plaintiffs allege violations of rights afforded by the Puerto Rico Civil Code. (Docket No. 1 at 25-7.) Specifically, Plaintiffs allege violations of Law 100 and Articles 1802 and 1803 of the Puerto Rico Civil Code, and violations of Article II, Sections One, Four, and Six of the Constitution of Puerto Rico. (Id.) The complaint does not make clear what action constitutes the basis for these violations. Plaintiffs are alleging tort violations under Article 1802 of the Puerto Rico Civil Code. (Docket No. 68 at 26-27.)

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we have original jurisdiction. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial … the state claims should be dismissed as well). In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and

Case 3:11-cv-01025-JAF   Document 145   Filed 08/14/13   Page 12 of 12

Civil No. 11-1025 (JAF)                                                                                      -12-

comity." Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003). Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiffs' Commonwealth law claims and we dismiss them without prejudice.

## IV.

## Conclusion

For the foregoing reasons, Defendants' summary judgment motion, (Docket No. 89), is **GRANTED**. Plaintiffs' federal law claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of August, 2013.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
